UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONNECTICUT ATTORNEYS TITLE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>LOAN FUNDER LLC, *Series 53008*,<br><br>Defendant. | *<br>*<br>*<br>*<br>*<br>*   Civil Action No. 1:24-cv-11527-IT<br>*<br>*<br>*<br>*<br>* |

MEMORANDUM & ORDER

February 14, 2025

TALWANI, D.J.

Plaintiff Connecticut Attorneys Title Insurance Company ("CATIC") filed this action seeking a declaratory judgment that the Closing Protection Letter CATIC issued to Defendant Loan Funder LLC, Series 53008 ("Loan Funder") does not require CATIC to indemnify Loan Funder for losses it suffered in connection with a failed mortgage transaction. Loan Funder's counterclaim seeks a declaratory judgment that the Closing Protection Letter requires CATIC to indemnify Loan Funder for the loss of the loan funds. Loan Funder also asserts a claim under M.G.L. c. 93A for unfair and deceptive practices in connection with CATIC's handling of Loan Funder's claim under the Closing Protection Letter. Now pending is CATIC's <u>Motion for Judgment on the Pleadings</u> [Doc. No. 9] as to all claims and counterclaims. For the reasons set forth below, CATIC's <u>Motion</u> [Doc. No. 9] is denied.

**I.   Standard of Review**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In reviewing a motion under Rule 12(c), the court takes "all well-pleaded facts in the light most favorable to the non-moving party and

draw[s] all reasonable inferences in that party's favor." Najas Realty, LLC v. Seekonk Water Dist., 821 F.3d 134, 140 (1st Cir. 2016). A motion for judgment on the pleadings is treated "much like a Rule 12(b)(6) motion to dismiss." Simmons v. Galvin, 575 F.3d 24, 30 (1st Cir. 2009) (quoting Pérez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008)).

However, unlike a Rule 12(b)(6) motion, a Rule 12(c) motion "implicates the pleadings as a whole." Aponte-Torres v. Univ. Of Puerto Rico, 445 F.3d 50, 54–55 (1st Cir. 2006). Therefore, a Rule 12(c) motion "must be based solely on the factual allegations in the complaint and answer." NEPSK, Inc. v. Town of Houlton, 283 F.3d 1, 8 (1st Cir. 2002). Because of the obligation to view the facts and draw reasonable inferences in favor of the nonmovant, the court treats any allegations in the movant's pleading that contradict the nonmovant's pleading as false. See Lopes v. Riendeau, 177 F. Supp. 3d 634, 665 (D. Mass. 2016) (explaining "the court treats any allegations in the answer that contradict the complaint as false" where defendant moved for judgment on the pleadings (quoting Goodman v. Williams, 287 F. Supp. 2d 160, 161 (D.N.H. 2003))). "Rule 12(c) does not allow for any resolution of contested facts; rather, a court may enter judgment on the pleadings only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment." Patrick v. Rivera-Lopez, 708 F.3d 15, 18 (1st Cir. 2013) (quoting Aponte-Torres, 445 F.3d at 54).

II.     **Factual Background in the Light Most Favorable to the Nonmovant**

Loan Funder is a lender. Am. Counterclaim ¶ 4 [Doc. No. 7]. Non-party Capital On Demand Inc. ("Capital On Demand") introduced a borrower who needed funds for a real property refinancing transaction to Loan Funder. Id. CATIC was selected to provide title insurance and the Closing Protection Letter for the transaction. See Am. Counterclaim ¶ 5 [Doc. No. 7].

On May 16, 2023, CATIC provided Loan Funder a commitment to issue title insurance on Loan Funder's mortgage once the transaction closed. See Am. Counterclaim ¶ 5 [Doc. No. 7]; Commitment Letter, Am. Counterclaim Ex. G [Doc. No. 7-7]. On the same date, CATIC issued the Closing Protection Letter to Loan Funder. Am. Counterclaim ¶ 5 [Doc. No. 7]; Closing Protection Letter, Am. Counterclaim Ex. F [Doc. No. 7-6]. The Closing Protection Letter listed Mashmasarmi Law, P.C. ("Mashmasarmi Law") as CATIC's "'Issuing Agent' or 'Approved Attorney,' as the case may require." Am. Counterclaim Ex. F [Doc. No. 7-6]. Attorney Shabnam Mashmasarmi, who is affiliated with Mashmasarmi Law, signed the commitment letter and participated in the transaction. See Am. Answer ¶¶ 8–9 & Am. Counterclaim ¶ 5 [Doc. No. 7].

The Closing Protection Letter provided that CATIC "agrees to indemnify [Loan Funder] for actual loss of Funds incurred by [Loan Funder] in connection with the closing of the Real Estate Transaction conducted by the Issuing Agent or Approved Attorney on or after the Date of this letter, subject to [certain] Requirements and Conditions and Exclusions." Am. Counterclaim Ex. F [Doc. No. 7-6]. Those requirements, conditions, and exclusions, as relevant here, are discussed further below.

The same day that CATIC issued the Closing Protection Letter, Loan Funder's counsel emailed instructions regarding the loan funds to Mashmasarmi Law. Am. Counterclaim ¶ 6 [Doc. No. 7]. The email stated that Loan Funder's counsel would "initiate the wire to you in the amount of $613,758.49" and directed Mashmasarmi Law to "hold monies in escrow pending [Loan Funder's attorney's] final authorization to disburse." Id. Funds were wired to Mashmasarmi Law later that day. Id. Loan Funder's attorney never instructed Mashmasarmi Law to disburse the funds. Id.

3

On May 17, employees of Mashmasarmi Law and/or Zaheer Law[1] sent Loan Funder's counsel executed loan documents and a Certification of Title that was signed by the mortgagors and stated that Loan Funder's mortgage had been recorded. Am. Counterclaim ¶ 7 [Doc. No. 7]; Am. Counterclaim Ex. A [Doc. No. 7-1] (stating that "[a] mortgage . . . securing a loan in the amount of $656,000.00 against the above mentioned property to [Loan Funder] was recorded with the Suffolk County Registry of Deeds"). However, unbeknownst to Loan Funder, CATIC's agent did not close the transaction and Loan Funder's mortgage was not recorded. Am. Answer ¶¶ 39–40 [Doc. No. 7].

On June 2, 2023, an individual affiliated with Capital On Demand instructed Mashmasarmi Law to wire Loan Funder's loan funds to Capital On Demand. Am. Counterclaim ¶ 8 [Doc. No. 7]; see Compl. ¶¶ 25–27 [Doc. No. 1]. Mashmasarmi Law did so without confirming those instructions with Loan Funder. Am. Counterclaim ¶ 8 [Doc. No. 7].

Believing that its mortgage had been recorded, Loan Funder sold the loan to a third party. Id. at ¶ 9. After some time, the buyer informed Loan Funder that it had not received payments on the loan. Id. Loan Funder contacted Attorney Mashmasarmi and, after a lengthy delay, learned that Mashmasarmi Law had disbursed the funds to Capital On Demand. See id.

On May 15, 2024, Loan Funder notified CATIC of Loan Funder's claim under the Closing Protection Letter for indemnification of the funds disbursed to Capital On Demand. Id.

---

[1] CATIC alleges that Mashmasarmi Law enlisted another firm, Zaheer Law, to act as the closing agent for the Transaction. Compl. ¶ 8 [Doc. No. 1]. Schedule A to CATIC's commitment letter lists Zaheer Law as the issuing agent for the commitment letter and is signed by Shabnam Mashmasarmi as the authorized signatory. Am. Counterclaim Ex. G [Doc. No. 7-7]. Loan Funder alleges that Shabnam Mashmasarmi used email addresses at both firms and, on information and belief, alleges that she is a founder and principal at Mashmasarmi Law and practices with Zaheer Law. Am. Answer ¶ 8 [Doc. No. 7].

CATIC did not provide Loan Funder with a final coverage determination and instead filed this action. Id. at ¶ 10.

### III.   Discussion

#### A.   *Crossclaims for Declaratory Judgment*

Loan Funder asserts several theories for coverage under the Closing Protection Letter. First, Loan Funder claims it suffered a loss caused by Mashmasarmi Law's failure to comply with Loan Funder's written closing instructions and failure to return the loan funds to Loan Funder. Am. Counterclaim ¶¶ 12, 17 [Doc. No. 7].[2] Loan Funder also asserts that its loss was caused by Mashmasarmi Law's false certification that the mortgage securing the loan had been recorded and the failure to rescind the certification. Id. at ¶¶ 14–18.[3]

CATIC argues that the Closing Protection Letter does not require CATIC to indemnify Loan Funder for four reasons. First, the Closing Protection Letter disclaims indemnification for Loan Funder's losses if the transaction did not close within one year, and CATIC argues that the transaction never closed. Mem. ISO Mot. 7 [Doc. No. 10]. Second, Loan Funder ended up with no mortgage on the property, and CATIC argues that Loan Funder therefore cannot assert a claim related to "the validity, enforceability, or priority" of its mortgage. Id. Third, CATIC contends that its obligation to issue title insurance was a condition precedent to indemnification under the Closing Protection Letter and that it was never obligated to issue title insurance

---

[2] In briefing, Loan Funder elaborated that this failure related to both "the disbursement of Funds necessary to establish the status of Title to the Land" and "the validity, enforceability, or priority of the lien of the Insured Mortgage." See Opp'n 7–8 [Doc. No. 16]; Am. Counterclaim Ex. F [Doc. No. 7-6].

[3] Loan Funder elaborated that this failure amounted to "fraud, theft, dishonesty, or misappropriation" in handling the loan funds. See Opp'n 8 [Doc. No. 16]; Am. Counterclaim Ex. F [Doc. No. 7-6].

because Loan Funder had no mortgage to insure. See id.; id. at 12. Fourth, CATIC claims that the Closing Protection Letter is unenforceable because it was not supported by consideration. Id. at 7.

CATIC's arguments are not persuasive.

> 1. The Closing Protection Letter Covers Losses Where Closing Funds Were Wired to the Issuing Agent Within One Year of Issuance of the Closing Protection Letter.

The Closing Protection Letter excludes liability if "the Real Estate Transaction has not closed within one year" from the date that the Closing Protection Letter was issued. Am. Counterclaim Ex. F [Doc. No. 7-6]. CATIC argues that it has no liability pursuant to this exclusion because "the Transaction never closed." Mem. ISO Mot. 8 [Doc. No. 10].

Under Massachusetts law, courts construe indemnification agreements "like any other contract, with attention to language, background, and purpose," and without any bias for the indemnitor or against the indemnitee. Herson v. New Boston Garden Corp., 40 Mass. App. Ct. 779, 782, 667 N.E.2d 907 (1996). Title insurance companies issue Closing Protection Letters "to indemnify lenders and purchasers for the local agent's errors or dishonesty with escrow or closing funds" in an attempt to persuade customers to trust their agents and ultimately purchase a policy. JPMorgan Chase Bank, N.A. v. First Am. Title Ins. Co., 750 F.3d 573, 578–79 (6th Cir. 2014), as amended (July 2, 2014) (quoting New Freedom Mortgage Corp. v. Globe Mortgage Corp., 761 N.W.2d 832, 842 (Mich. Ct. App. 2008)).

Here, interpreting the Closing Protection Letter to disclaim liability for the handling of closing funds forwarded to the Issuing Agent within one year of the issuance of the Closing Protection Letter would eliminate the Closing Protection Letter's core purpose by absolving the title insurer of responsibility for conduct by its agent that prevents the lender from obtaining the

mortgage that it bargained for. See F.D.I.C. v. Prop. Transfer Servs., Inc., 2013 WL 5535561, at *10 (S.D. Fla. Oct. 7, 2013).

Additionally, the Closing Protection Letter explicitly contemplates losses associated with a closing that is not completed after funds are provided. The Closing Protection Letter covers losses caused by "a failure of [CATIC's] Issuing Agent or Approved Attorney to comply with [Loan Funder's] written closing instructions" related to "the Disbursement of Funds necessary" to establish Loan Funder's Mortgage. Am. Counterclaim Ex. F [Doc. No. 7-6]. This language covers conduct that prevents the lender from receiving a mortgage. But under CATIC's reading, the exclusion would make this coverage a nullity. Instead, under that view, the Closing Protection Letter would only provide indemnification for failure to disburse funds in accordance with directions where it is not needed, namely where the lender received the mortgage it bargained for notwithstanding an Issuing Agent's failure to follow instructions.

Based on the Closing Protection Letter's text and purpose, the court finds that "closed within a year" includes a failed closing where, as alleged here, the funds have been transmitted and documents have been signed within one year.

        2.        Loan Funder Alleges a Loss that Falls Within the Closing Protection Letter's Language.

The Closing Protection Letter limits losses to those caused by "a failure of the Issuing Agent or Approved Attorney to comply with [Loan Funder's] written closing instructions" or "fraud, theft, dishonesty, or misappropriation by the Issuing Agent or Approved Attorney in handling" the loan funds or closing documents. Am. Counterclaim Ex. F [Doc. No. 7-6]. The Closing Protection Letter further limits liability to failures to follow instructions relating to "the disbursement of funds necessary to establish the status of the Title to the Land" or conduct affecting "the validity, enforceability, or priority of the lien of the Insured Mortgage on the Title

7

to the Land." Id. CATIC argues that because Loan Funder did not receive a mortgage, Loan Funder's claim is not related to conduct that affected "the validity, enforceability, or priority of . . . the Insured Mortgage." Mem. ISO Mot. 10 [Doc. No. 10]. But the pleadings allege that Loan Funder did not obtain a mortgage because Mashmasarmi Law wired the funds which would have established the mortgage to an unauthorized recipient. Am. Counterclaim ¶¶ 6–10, 18–19 [Doc. No. 7].

The Closing Protection Letter covers losses caused by Mashmasarmi Law's failure to follow Loan Funder's "written closing instructions that relate to . . . the disbursement of Funds necessary to establish the status of the Title to the Land." See Am. Counterclaim Ex. F. [Doc. No. 7-6]. And conduct that deprived Loan Funder of title to the property is conduct that affects "the validity, enforceability, or priority of . . . the Insured Mortgage." Am. Counterclaim Ex. F. [Doc. No. 7-6].

In F.D.I.C. v. Property Transfer Services, the court explained that a Closing Protection Letter provides broader protection than a title insurance policy: The policy addresses the lender's ability to foreclose on an insured mortgage, but a Closing Protection Letter "relates to . . . how the closing agent's conduct affects a mortgage holder's ability to obtain what it bargained for."[4] 2013 WL 5535561, at *10. In a mortgage transaction, a lender reasonably expects to have "(1) a bona fide mortgagor with the capacity to make mortgage payments; (2) a valid first lien on the property; and (3) the right to seek recovery of a deficiency after foreclosure from the mortgagor."

---

[4] Like the Closing Protection Letter at issue here, the Closing Protection Letter in F.D.I.C. required indemnification for losses caused by the agent's "failure . . . to comply with . . . written closing instructions to the extent that they relate to (a) the status of the title to said interest in land or the validity, enforceability and priority of the lien of said mortgage on said interest in land . . . ." F.D.I.C., 2013 WL 5535561, at *9.

8

Id. at *12. In F.D.I.C., the lender issued a loan to a straw borrower as a result of the insurer's agents' failure to ensure that the transaction complied with the lender's closing requirements. Id. at *10. Although the lender was able to foreclose on the loan, the agents' conduct fell within the scope of the Closing Protection Letter because the lender obtained two mortgages without a bona fide mortgagor and provided funds to participants in a mortgage fraud scheme. Id. at *12.

Similarly, Loan Funder has alleged that CATIC's agent's conduct prevented Loan Funder from receiving the benefit of its bargain. Attorney Mashmasarmi failed to follow Loan Funder's disbursement instructions to wait for further instructions from Loan Funder and instead wired the loan funds to Capital On Demand. Am. Counterclaim ¶¶ 6, 8 [Doc. No. 7]; Compl. ¶ 28 [Doc. No. 1]. CATIC's agent also allegedly provided a certificate of title that falsely claimed that the mortgage had been recorded with the registry of deeds. Because CATIC's agent's alleged conduct deprived Loan Funder of an enforceable mortgage and valid lien, the alleged conduct affected "the validity, enforceability, or priority of . . . the Insured Mortgage." See Am. Counterclaim Ex. F [Doc. No. 7-6].

CATIC relies on James B. Nutter & Co. v. Old Republic National Title Insurance Co., 2016 WL 5792686, (N.D. Ga. Oct. 4, 2016) to argue that CATIC's agent's conduct did not affect Loan Funder's title. Mem. ISO Mot. 11 [Doc. No. 10]. There, the plaintiff sought coverage under a Closing Protection Letter after the loans at issue had been tainted by a fraudulent scheme in which the defendant's title agent disguised the source of the loan funds at closing. James B. Nutter, 2016 WL 5792686, at *2. However, the lender there did obtain a mortgage, had not demonstrated any title defect resulting from the closing agent's fraud, and had been able to foreclose on several of the loans that were affected by the scheme. Id. at *3. Here, Loan Funder's

mortgage allegedly was never recorded, which impacted the "the validity, enforceability, or priority of . . . the Insured Mortgage."

In sum, CATIC has not demonstrated that Loan Funder's claimed loss is not covered by the language in the Closing Protection Letter.

        3.        CATIC's Commitment Letter Contractually Obligated CATIC to Issue Title Insurance.

The Closing Protection Letter includes as a requirement for coverage that CATIC issues or "is contractually obligated to issue" a title insurance policy to Loan Funder in connection with the real estate transaction. Am. Counterclaim Ex. F [Doc. No. 7-6]. CATIC issued a title insurance commitment letter obligating CATIC to issue a title insurance policy on the occurrence of several events related to the closing. Am. Counterclaim Ex. G [Doc. No. 7-7]. CATIC argues that, because those events did not occur, it was never contractually obligated to issue a policy and therefore is not obligated to indemnify Loan Funder under the Closing Protection Letter.[5] Mem. ISO Mot. 12–13 [Doc. No. 10].

CATIC's argument is inconsistent with the Closing Protection Letter's text. Under the Closing Protection Letter, CATIC's indemnification obligations are triggered when it "issues or is contractually obligated to issue" title insurance. Am. Counterclaim Ex. F [Doc. No. 7-6]. This language does not require an unconditional obligation. CATIC issued a title insurance commitment at the same time it issued the Closing Protection Letter. See Am. Counterclaim Ex.

---

[5] CATIC argues in a footnote that the commitment is also invalid because it was issued by Zaheer Law, which was not CATIC's authorized agent. Mem. ISO Mot. 12 n.4 [Doc. No. 10]. However, CATIC alleges in its Complaint that Mashmasarmi Law was CATIC's agent for purposes of issuing a title insurance policy to Loan Funder, and Mashmasarmi Law enlisted Zaheer Law to act as the closing agent for the Transaction. Compl. ¶¶ 7–8, 10 [Doc. No. 1]; see Am. Answer ¶ 7–8, 10 [Doc. No. 7].

F [Doc. No. 7-6]; Am. Counterclaim Ex. G [Doc. No. 7-7]. The title insurance commitment states that it created an "obligation . . . to issue a policy to a proposed insured," i.e. Loan Funder. Am. Counterclaim Ex. G [Doc. No. 7-7]. This obligation triggered CATIC's indemnification obligations under the Closing Protection Letter.

Further, if CATIC was only required to indemnify Loan Funder once all conditions precedent to the issuance of a policy occurred, CATIC would only have to indemnify Loan Funder if CATIC issued a policy. This would make language requiring indemnification when CATIC "is contractually obligated to issue" a policy surplusage.

In sum, the contingencies to the issuance of title insurance do not undermine the coverage of the Closing Protection Letter.

### 4. The Closing Protection Letter is Supported by Consideration.

CATIC has also failed to establish that the Closing Protection Letter is unenforceable for lack of consideration. Under Massachusetts law, "[t]he requirement of consideration is satisfied if there is either a benefit to the promisor or a detriment to the promisee." Marine Contrs. Co., Inc. v. Hurley, 365 Mass. 280, 286, 310 N.E.2d 915 (1974). Where a lender purchases a title insurance policy in exchange for protection under a Closing Protection Letter, that purchase is consideration that supports the Closing Protection Letter. JP Morgan Chase Bank, N.A. v. First Am. Title Ins. Co., 795 F. Supp. 2d 624, 630 (E.D. Mich. 2011), aff'd sub nom. JPMorgan Chase Bank, N.A. v. First Am. Title Ins. Co., 750 F.3d 573 (6th Cir. 2014), as amended (July 2, 2014). And "a promise which is bargained for is consideration if . . . the promised performance would be consideration." RESTATEMENT (SECOND) OF CONTRACTS § 75 (AM. L. INST. 1981). Additionally, a promise to pay for services constitutes consideration even where the promisee is not ultimately paid. See Huang v. Ma, 491 Mass. 235, 240, 201 N.E.3d 713 (2023) (consideration supported parties' agreement that plaintiff would be exclusive buyer's agent,

11

which would entitle her to commission, but plaintiff was not paid commission); see also Source One Financial Corp. v. Progressive Direct Ins. Co., 2015 Mass. App. Div. 167, at *2 (Dist. Ct. 2015) (promise to purchase insurance constituted consideration where premium payment was rejected). It follows that a lender's promise to purchase title insurance constitutes consideration for the insurer's indemnification obligations under the Closing Protection Letter.

Here, one can infer from the facts alleged in the Counterclaim and from the Closing Protection Letter that Loan Funder promised to purchase a title insurance policy from CATIC and, in return, CATIC assumed the obligations under the Closing Protection Letter. The pleadings allege that CATIC was selected to provide title insurance on Loan Funder's mortgage, and that CATIC provided Loan Funder a commitment to issue title insurance. Am. Counterclaim ¶ 5 [Doc. No. 7]. Additionally, Loan Funder alleges that it disbursed loan funds to CATIC's agent. Compl. ¶ 14 [Doc. No. 1]; Am. Answer ¶ 14 [Doc. No. 7].

In sum, the pleadings sufficiently allege that Loan Funder suffered a detriment in exchange for CATIC's indemnification obligations under the Closing Protection Letter: Loan Funder disbursed loan funds for the mortgage that was to be insured and promised to purchase title insurance from CATIC. See James Bruce Davis, The Law of Closing Protection Letters, 36 TORT & INS. L.J. 845, 853 (2001) (explaining "the closing protection letter obligate[s] the title insurer to indemnify the lender for losses" after the lender takes specific actions "such as providing funds and documents to an issuing agent or approved attorney in a transaction where the lender has ordered a title insurance policy from the particular title insurer").

In sum, CATIC is not entitled as a matter of law to a no-coverage finding.

B.   *Loan Funder's Counterclaim Under M.G.L. c. 93A*

Loan Funder alleges that CATIC engaged in unfair and deceptive conduct in the course of the real estate transaction. Loan Funder alleges conduct that violated M.G.L. c. 176D, which

defines unfair insurance claim settlement practices. This conduct includes failing to investigate issues related to CATIC's agents' failure to close the transaction, failing to effectuate a prompt settlement where liability is reasonably clear, and taking advantage of Attorney Mashmasarmi's affiliation with multiple law firms to avoid liability under the Closing Protection Letter. See Am. Counterclaim ¶ 24 [Doc. No. 7]. Loan Funder also alleges that CATIC issued the Closing Protection Letter that it claims is unenforceable to induce Loan Funder to purchase a title insurance policy from CATIC, which means CATIC issued the Letter "to deceive Loan Funder." Am. Counterclaim ¶ 27 [Doc. No. 7].

CATIC argues that it properly denied indemnification under the Closing Protection Letter, and Loan Funder's counterclaim under M.G.L. c. 93A thus fails because "CATIC cannot be liable under Chapter 93A for a correct reading of the [Closing Protection Letter]." Mem. ISO Mot. 15 [Doc. No. 10]. CATIC further argues that assuming it properly denied coverage, Loan Funder cannot have been harmed by "CATIC's assertion of other grounds for the denial" or the issuance of an "unenforceable, gratuitous, promise." Mem. ISO Mot. 15 [Doc. No. 10]. As set forth above, however, CATIC is not entitled to a finding that its reading of the Closing Protection Letter is correct or that the Closing Protection Letter is unenforceable for lack of consideration.

In any event, Loan Funder's Chapter 93A claim is directed to more than just a denial of coverage. Loan Funder alleges that CATIC engaged in "unfair or deceptive acts or practices" in the course of the transaction for title insurance and the handling of Loan Funder's claim under the Closing Protection Letter. Loan Funder has alleged deceptive conduct: the issuance of the Closing Protection Letter to induce Loan Funder to purchase insurance from CATIC and CATIC's subsequent assertion that the Letter is unenforceable. Loan Funder has also alleged

13

unfair conduct, i.e. violations of M.G.L. c. 176D. See Hampshire House Corp. v. Fireman's Fund Ins. Co., 557 F. Supp. 3d 284, 301 (D. Mass. 2021) ("Claims under Chapter 93A may be based on conduct that also violates Chapter 176D."). And Loan Funder has alleged that it suffered harm as a result of entering the transaction, namely, the loss of loan funds. Loan Funder has thus stated a claim under M.G.L. c. 93A. See Rafferty v. Merck & Co., Inc., 479 Mass. 141, 161, 92 N.E.3d 1205 (2018).

IV.    Conclusion

For the foregoing reasons, CATIC's Motion for Judgment on the Pleadings [Doc. No. 9] is DENIED.

IT IS SO ORDERED.

February 14, 2025                    /s/Indira Talwani
                                     United States District Judge